## SCOTT v. JONES. *
### No. 4797.

Court of Appeal of Louisiana.
Second Circuit.

June 29, 1934.

Phanor Breazeale and Blount B. Breazeale, Jr., both of Natchitoches, for appellant.

James W. Jones, Jr., of Natchitoches, in pro. per.

TALIAFERRO, Judge.

Plaintiff, the owner and operator of the S. D. S. Filling Station in the city of Natchitoches, La., brings this suit against defendant to recover balance alleged to be due on open account covering sales of gas, lubricating oil, etc., for the period beginning October 29, 1929, and ending October 17, 1932. The total debits, including two of defendant's dishonored checks for $5 and $4, amount to $1,016.26, while the admitted credits on the account aggregate $752.38, leaving the balance of $263.88 sued for.

Defendant challenges the correctness of the account, and specifically avers that the aggregate amount of debits (purchases) thereon should be $745.98, and that the correct amount of credits should be $822.08. He further avers that for the period between December 4, 1931, and April 10, 1932, he was engaged, by written contract, to Pan-American Petroleum Corporation, herein sometimes referred to as the oil company, as distributor of its products, and during said time operated a filling station of his own about three miles west of Natchitoches, in conjunction with a mercantile business, under the trade-name of Westside Mercantile Company; that between said dates he purchased all his oils, gas, and other products for automobile operations and for said station from the said Pan-American Petroleum Corporation; that the following debit items listed on the account, for oil, gas, etc., covered purchases by him from the oil company for which he paid it by checks of his own and of the said Westside Mercantile Company, drawn to the order of Pan-American Petroleum Corporation, and delivered to and collected by it or its agent, to wit:

| | | |
|---|---|---|
| 1931—December | 14th, etc. | $47.00 |
| 1932—January | 8th, etc. | 33.90 |
| January | 14th, etc. | 49.30 |
| February | 1st, etc. | 52.30 |
| February | 10th, etc. | 52.71 |
| Total | | $235.21 |

That plaintiff had no connection with these purchases, and had no right to charge the amount thereof to, and in the account against, defendant, and that same was done without his consent or knowledge. He further avers that he kept no record of his account with plaintiff, depending on him to correctly do so, and to make proper entry of all debits as well as credits between them, which he did

not do; that defendant made payments thereon regularly as plaintiff would advise him the amount due.

By way of reconvention, defendant alleges that he overpaid plaintiff to the extent of $76.10.

In the alternative, defendant pleads that in the event it should be held that the items charged to him, totaling $235.21, listed above, were so properly charged, which he specially denies, and that he should pay for same, in such event he shows that the aggregate amount purchased by him of plaintiff, including said items, amounts to $981.19. He expressly pleads that he issued and delivered to plaintiff two checks amounting to $69.70 to apply as credit on said account, which were collected by him, but for which he was not given credit; that as the owner of the Westside Mercantile Company he drew checks to the Pan-American Petroleum Company to the amount of $229.98, which were collected, but for which plaintiff has not given him credit; making an overpayment of $71.85. He also prays for judgment in reconvention for $76.10, and in the alternative for judgment for $71.85.

The defendant, being the presiding judge of the Tenth judicial district court, recused himself and appointed Hon. John B. Hill, judge of an adjoining district, to try the case. There was judgment in reconvention for defendant for $5.55, and plaintiff appealed. In this court defendant asks for increase in this judgment to the amount prayed for by him in the lower court.

During the time the disputed items on the account sued on were in process of accumulating, the S. D. S. Service Station was owned by plaintiff and one S. M. Simms. They dissolved in March, 1932. Simms was also the local agent for bulk sales of the Pan-American Petroleum Corporation, but plaintiff was equally interested with him in that line of business also. It was the duty of Simms, as agent, to deliver to defendant, as distributer, and collect therefor, the products of his principal, when and in such quantities as his needs required. Defendant did not enjoy a credit rating with the Pan-American Petroleum Corporation, and under the terms of the contract he held with it he was required to pay cash for gas and oil, etc., delivered to his station when delivered. This was the agent's peremptory instruction from the principal, failing in which the responsibility, in event of loss, fell squarely on him. When a delivery was made to defendant, a check or other remittance had to accompany immediate report of the sale to the oil company. Defendant denies that he had knowledge of plaintiff's interest with Simms in the Pan-American agency. But that fact, if true, has no material bearing upon the controverted issues of the case. Plaintiff is positive that defendant authorized him to advance the money to Simms to pay for products delivered to his station during his absence. He says: "When this (referring to sales to defendant's station) started, Mr. Simms had to mark his tickets paid to send to the company, and Mr. Jones came in and made arrangements with me to take care of his account when he was not out there to take care of his tickets."

Simms did not hear this conversation, but corroborates plaintiff's version of the matter by testifying that when defendant was absent, or for other cause failed to promptly pay for the products delivered to his station, he (Simms) would go to plaintiff for the money to transmit with report of sale, and that the amount would be advanced and then be charged to defendant. Such arrangement as this, in view of all the circumstances and the then relations of the parties, would be nothing more than natural. Defendant had been a regular patron of the S. D. S. Station for more than two years prior to putting in a station of his own; his credit was then good at plaintiff's station; he was interested in seeing him supplied with gas and oil, as it meant something to plaintiff financially that such be done. Defendant, in the discharge of his judicial duties, was doubtless absent quite often. Hence, the inclusion in the account of the debit items aggregating $235.21 which defendant so vigorously assails. We might add here that defendant closed his filling station early in March, 1932, and resumed the purchase of oil and gas at plaintiff's station.

Defendant, as a witness, admits the correctness of plaintiff's account except in the following respects, viz.:

1. He denies that the items amounting to $235.21 should have been charged to him.

2. That the account for October, 1932, only aggregated $61.19; whereas, the account shows the total to be $84.50.

3. That credit on the account is not given for two of his checks issued to S. D. S. Station and collected by it—

(a) $39.70, dated March 4, 1932.

(b) $30, dated January 30, 1932.

Therefore, our labors need not extend into an inquiry of the account beyond the limits to which the issues have been restricted by defendant himself.

The items in dispute, embraced in No. 1 above, claimed by defendant to have been

paid for by him to agent of oil company, are as follows:

| | | |
|---|---|---|
| Dec. 4, 1931— 5 gal. gas | .90 | |
| 14, 1931—160 gal. gas | 22.40 | |
| 24, 1931—160 gal. gas | 22.40 | |
| 5 gal. oil | 2.20 | 47.90 |
| Jan. 8, 1932—160 gal. gas | 22.40 | |
| 9, 1932— 50 gal. gas | 8.50 | |
| 10, 1932—Wash & grease | 2.00 | |
| Fuse | .20 | |
| Light Bulb | .80 | 33.90 |
| Jan. 14, 1932—160 gal. gas | 22.40 | |
| 5 gal. oil | 2.20 | |
| Jan. 23, 1932—160 gal. gas | 22.40 | |
| 5 gal. oil | 2.20 | |
| Jan. 26, 1932—Fuse | .10 | 49.30 |
| Feb. 1, 1932—160 gal. gas | 22.40 | |
| oil | 2.20 | |
| kerosene | 3.00 | |
| Feb. 5, 1932—160 gal. gas | 22.40 | |
| oil | 2.20 | |
| Fuse | .10 | 52.30 |
| Feb. 10, 1932— 98 gal. gas | 13.72 | |
| Feb. 11, 1932—oil | 2.20 | |
| C & P | .50 | |
| oil | .25 | |
| Feb. 19, 1932—106 gal. gas | 14.84 | |
| oil | 2.20 | |
| Feb. 25, 1932—100 gal. gas | 14.00 | |
| 10 gal. oil | 5.00 | 52.71 |

In support of his contention that the price of these purchases was paid by him to the Pan-American Petroleum Corporation, he offered in evidence the following checks:

| | |
|---|---|
| November 30, 1931 | 36.70 |
| December 26, 1931 | 24.60 |
| January 11, 1932 | 30.50 |
| February 1, 1932 | 24.60 |
| February 10, 1932 | 24.60 |
| February 23, 1932 | 13.60 |
| March 5, 1932 | 13.60 |
| March 12, 1932 | 12.50 |
| | $180.70 |

A comparison of the various charges with the amounts of the checks, considering also dates of both, does not, to any extent, lead us to the conclusions defendant urges upon us; to the contrary, we are impelled to the conviction that these checks were not issued to pay any part of the disputed items, but were issued to pay for other purchases made by defendant. Simms says they were delivered to him personally in payment for oil and gas, etc., deliveries at time of delivery. Defendant contends that the debits of February 10, 11, 19, and 25, amounting to $52.71, were paid by the following checks issued to Pan-American Petroleum Corporation, viz.:

| | |
|---|---|
| February 1, 1932 | $24.60 |
| February 23, 1932 | 13.60 |
| March 5, 1932 | 13.60 |
| March 12, 1932 | 12.50 |
| | $64.30 |

The excess in amount of checks over debit items does not support this contention, and, in addition, the check for $24.60 issued ten days before any of these purchases were made. It could not have been intended to apply on future purchases.

Defendant, anent this phase of his defense, climaxes his testimony by saying: "And I will state that I have paid to the Pan-American Corporation $282.08 which covered every item that I purchased from the Pan-American, and the very items $232.11 that they have charged on this account are very items for which I issued checks for the amount of $282.08."

If this were true, he purchased nothing from the Pan-American Petroleum Company after November 30, 1931, until December 26, 1931, nearly one month; and made no purchase between December 26 and January 11, nor between January 11 and February 1, and so on. This could hardly be true, as the record discloses he never bought over 200 gallons of gas at the time, and rarely, if ever, purchased more than 5 gallons of oil at one time. He was fueling his own car from his own station during these periods. This would have consumed the greater part of the gas purchased for the times, if he purchased no more than he says. Simms says the total of the sales to defendant amounted to as much as $1,200.

█ We conclude and hold these disputed charges have been proven against defendant, and were properly incorporated in the account. His plea of payment thereof has not been substantiated.

### Checks of $39.70 and $30.

█ The check for $30 is dated January 30, 1932. It was paid by the bank on February 1st. It is not credited on the account. Defendant offered it as proof of a payment by him. Plaintiff, when presented with the paid check, stated that he probably advanced the cash for it, but was not positive. He finally said he did not know whether it was intended as a credit on the account or not.

The check of $39.70 is dated March 4, 1932, and was paid by the bank on following day. It is in favor of S. D. S. and bears the indorsement of plaintiff and one Bill Stuckey. Defendant contends this check was issued by him as a credit on his account, while, as was his attitude towards the $30 check, plaintiff thought he may have cashed it, but was not certain it was not intended as a credit on the account as defendant insists.

Defendant's answer specifically set up that these checks, or rather checks to the amount of $69.70, had been delivered to plaintiff as payments on the account, and that credit therefor had not been given. Plaintiff was not taken by surprise when the checks were offered in evidence, but tendered no testimony to traverse that of defendant on the issue, save his own, which is not positive that these checks were not delivered him to be applied on the account. As to these two checks we think defendant's plea of payment is supported by a preponderance of the testimony.

#### 1932 October Account.

When plaintiff made credit sale of gas or oil to a customer, a duplicate record was made thereof on slips of paper prepared for the purpose on which was written by some one in the station, generally the one making the sale, the date, name of the customer, goods purchased, price of each item, and total of same. At the end of the month one of the duplicate credit slips, with statement of the account, was either mailed to the customer or delivered by hand to him. The ledger account was made up from these slips. Defendant ceased trading with plaintiff on October 19, 1932. He made payments on the account, however, of $25 each in January and February, following. As the old balance on the account had been due for many months, at about the end of February the account was placed in the hands of an attorney at law in Natchitoches, for collection, other than the one who brought the suit. The charge slips which were retained by plaintiff were delivered to this attorney, but were lost or misplaced by him. There is an intimation in the record that they fell into the hands of defendant, but this is not positively proven. Defendant introduced in evidence the October sale slips he claims to have received from plaintiff. These only total $61.19. The account shows the total of credit sales to defendant in October aggregated $84.50. During this month, and for the preceding several months, he was engaged in a campaign for position on the Court of Appeal, Second Circuit. The first primary was held on September 13, and the second on October 18. For both months he was a liberal customer of plaintiff. The September account reached $112. It would not have been out of line for the October account to have reached $84.50. Heavy sales were made on 18th, the day of the second primary. The correctness of this October account is testified to by plaintiff and his bookkeeper, and, all things considered, we think the account in this respect established.

For the reasons herein assigned, the judgment appealed from is annulled, avoided, and reversed, and for said reasons, it is now ordered, adjudged, and decreed that plaintiff, C. Rex Scott, have and recover judgment against the defendant, James W. Jones, Jr., for $194.18, with legal interest thereon from judicial demand, and for costs.